UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| KYLE B. RICHARDS, #641715, et al., | Case No. 2:20-cv-00076 |
| Plaintiffs, | Hon. Hala Y. Jarbou U.S. District Judge |
| v. | |
| THOMAS PERTTU, | |
| Defendant. _____/ | |

**REPORT AND RECOMMENDATION**

**I.    Introduction**

This Report and Recommendation (R&R) addresses the following:

- Defendant's motion for summary judgment (ECF No. 34),

- Plaintiffs' motion for a preliminary injunction and request to freeze federal aid to the State of Michigan (ECF No. 24),

- Plaintiffs' motion for a change of venue and request to disqualify the U.S. District Judge (ECF No. 25), and

- Plaintiffs' motions for protective orders and requests for federal investigation and monitoring (ECF No. 38, 47).

State prisoners Kyle Richards, Kenneth Pruitt, and Robert Kissee filed this civil rights action, pursuant to 42 U.S.C. § 1983, on April 23, 2020. (ECF No. 1.) In Plaintiffs' verified complaint, they alleged numerous claims against Residential Unit Manager (RUM) Thomas Perttu. (ECF No. 1.) According to Plaintiffs, while they

1

were imprisoned at Baraga Correctional Facility (AMF), RUM Perttu made numerous improper sexual advances towards them, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. By undersigned's count, Plaintiffs have alleged approximately 34 Eighth Amendment claims. These claims allege violation by RUM Perttu from June 2019 through April 2020. In addition, Plaintiffs allege approximately 26 acts by RUM Perttu in which Perttu supposedly interfered with Plaintiffs' ability to file grievances or otherwise pursue remedies against him. These acts of interference allegedly began in August 2019 and continued through April 2020.

In his motion for summary judgment, RUM Perttu contends that Plaintiffs failed to properly exhaust their claims against him because their prison records show that no grievances were filed by them in 2019 and 2020. (ECF Nos. 34, 35.) In response, Plaintiffs claim that Perttu thwarted their efforts to exhaust their claims by intercepting and destroying their Prison Rape Elimination Act (PREA) grievances. (ECF No. 51.) In reply, RUM Perttu argues that PREA grievances are widely available to prisoners and that Plaintiffs' grievance records do not show that they filed any PREA grievances while at AMF. (ECF No. 58.)

The undersigned concludes that there is a genuine issue of fact as to whether Plaintiffs were excused from properly exhausting their claims due to interference by Perttu. The undersigned also concludes that this issue is appropriate for resolution

during an evidentiary hearing conducted pursuant to *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).[1]

The undersigned also concludes that Plaintiffs' motions – ECF Nos. 24, 25, 38 and 47 – are meritless.

Accordingly, the undersigned respectfully recommends that the Court deny RUM Perttu's motion for summary judgment. For the reasons below, the undersigned also recommends that the Court deny all of Richard's motions.

## II. Additional Relevant Procedural History

On April 23, 2020, Plaintiffs filed this action in the U.S. District Court for the Eastern District of Michigan. (ECF No. 1.) On June 4, 2020, the case was transferred to this Court. (ECF No. 6.)

---

[1] The Eastern District of Michigan has explained that, in cases where a plaintiff claims that his efforts to exhaust his claims were thwarted, the defendant must first show that the grievance process was generally available to the plaintiff. *Alexander v. Calzetta*, No. 2:16-CV-13293, 2018 WL 8345148, at *8 (E.D. Mich. Nov. 30, 2018), report and recommendation adopted, No. 16-CV-13293, 2019 WL 1011106 (E.D. Mich. Mar. 4, 2019). Then, once this showing has been made, the burden of production shifts to the defendant to produce evidence showing that he was thwarted in his attempts to use the grievance procedures. *Id*. The District Court for the Eastern District of Michigan outlined the process as follows:
> once a defendant carries the burden of showing that there was a generally available administrative remedy, and that the prisoner did not exhaust that remedy, the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward, with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.

*Id*. at *6 (internal quotation marks and citation omitted).

The case was stayed and entered early mediation. (ECF Nos. 11, 12.) The case failed to settle. (ECF Nos. 13, 15, and 16.)

### III. Defendants' Summary Judgment Motion (ECF No. 35)

#### a. Standard Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

#### b. Applicable Law: Exhausting Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on

---

[2] Disputed issues of fact regarding exhaustion under the Prison Litigation Reform Act (PLRA) may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d at 678.

4

a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). In rare circumstances, an administrative remedy will be considered

unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance [or other administrative] process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 1174, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.  In the Court's view, this objective was achieved in three ways.  First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Id.* at 525.  Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).*  And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.*  When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 2007 U.S. Dist. LEXIS 81101 at \*12.

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint.  Inmates must first attempt to resolve

a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity'

8

> to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

**c. Analysis**

As noted in the Introduction, the question presented is whether there is a genuine issue of fact as to whether prison officials thwarted Plaintiffs' attempts to exhaust their claims. As explained below, the undersigned concludes that genuine issues of fact remain.

The Supreme Court held that the grievance process will be considered unavailable to prisoners whenever prison officials thwart the prisoners' attempts to exhaust "through machination, misrepresentation, or intimidation." *Ross*, 136 S.Ct. at 1859-60. In Plaintiffs' verified complaint, they allege that RUM Perttu actively prevented Plaintiffs from being able to exhaust their claims against him. Plaintiffs repeatedly claim that Perttu intercepted and destroyed PREA grievance forms that they wished to file. For example, they allege that, on August 19, 2019, RUM Perttu went to Richards' cell, displayed four PREA grievances that Richards says he had attempted to file, and tore the grievances up in front of Richards. (ECF No. 1, PageID.19.) Richards claims that he was able to file other grievances but that all of his grievances relating to sexual abuse were thwarted. (*Id*.) In another example, the

---

[3] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

9

complaint alleges that, on February 4, 2020, RUM Perttu went to Pruitt's cell, took two PREA grievances, crumpled them, and told Pruitt that the grievances were going into the trash. (*Id.*, PageID.22.) The complaint also alleges that the final instance of RUM Perttu thwarting Plaintiffs' efforts to exhaust took place on April 15, 2020. (ECF No. 1, PageID.22.)

In reply to Plaintiffs' argument, RUM Perttu asserts that Plaintiffs' grievance records do not show that Plaintiffs filed a grievance or PREA grievance against him at AMF in 2019 or 2020. (ECF No. 58.) Perttu submitted an affidavit by AMF Grievance Coordinator Thomas Hamel (ECF No. 58-2) and the applicable grievance policy (ECF No. 58-3). Hamel states that grievance forms are widely available throughout the AMF housing units and that prisoners may file grievances in kite boxes, "which are located in every housing unit and in the mess hall." (ECF No. 58-2, PageID.272-73.) Coordinator Hamel also attests that he did not fail to process a grievance from Plaintiffs. (*Id.*)

Logic dictates that it would be extremely difficult for RUM Perttu to single-handedly identify and intercept every single PREA grievance the Plaintiffs claimed to have written over a period of many months. Nevertheless, those are the allegations made by Plaintiffs. Obviously, RUM Perttu does not work 24 hours per day, seven days per week. And it seems logical that Plaintiffs would have opportunities to file or deliver PREA grievance forms when Perttu was not in the housing unit. Furthermore, it seems logical that Plaintiffs would routinely encounter other prison officials who could have received PREA grievance forms. But Defendant does not

10

make these arguments. He simply says grievance forms are available and kite boxes are located throughout the housing units. The Court cannot base its decisions on speculation or arguments a defendant has failed to make.

Accordingly, the undersigned concludes (1) that there is a genuine issue of fact as to whether Plaintiffs were thwarted from being able to properly exhaust their sexual abuse claims, and (2) that the exhaustion issue in this case is appropriate for resolution at an evidentiary hearing conducted pursuant to this Court's authority under *Lee v. Willey*.

### IV. Plaintiffs' Motion for a Preliminary Injunction and Request to Freeze Federal Aid to the State of Michigan (ECF No. 24)

Plaintiffs in this case filed a very similar motion in another case pending in this district. In *Richards, et al. v. Washington, et al.*, W.D. Mich. Case No. 2:20-cv-194 (hereinafter "Case 2"), Plaintiffs also filed a motion for preliminary injunction and request for freezing of federal aid to Michigan. (Case 2, ECF No. 18.) In fact, if that motion is compared, side-by-side, with ECF No. 24 in this case, one can see that the motion in this case is simply a copy of the other motion. The only differences are hand-written notations. U.S. District Judge Maloney denied Plaintiffs' motion. (Case 2, ECF No. 27, PageID.187.)

Plaintiffs also supplemented their motion in this case. (ECF No. 27.) RUM Perttu responded. (ECF No. 50.)

Preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)).

The issuance of preliminary injunctive relief is committed to the discretion of the district court. *Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *Ne. Ohio Coal.*, 467 F.3d at 1009. Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

First, as an initial matter, Plaintiffs' requested injunction is farfetched and unrealistic. This Court obviously cannot alter federal appropriations in the context of this case. In addition, all four factors outlined above weigh in favor of denying Defendants' request. First, Plaintiffs fail to articulate how they are likely to win on

the merits. (ECF No. 24, PageID.74.) Second, Plaintiffs did not explain what irreparable harm would occur but for an injunction being issued. Third, Plaintiffs' request as is would cause incalculable harm to people unrelated to this matter. And fourth, issuing a preliminary injunction is not in the public's best interest. The injunction would deny the State of Michigan accessing federal funds to help care for its 10 million residents.[4]

Accordingly, the undersigned respectfully recommends that the Court deny Plaintiffs' motion (ECF No. 24).

## V. Plaintiffs' Motion for a Change of Venue and to Disqualify the U.S. District Judge (ECF No. 25)

Plaintiffs filed a motion to disqualify Judge Maloney and to change venue. Although Judge Maloney is no longer the assigned U.S. District Judge, Plaintiffs' assertions extend to other judges in this district. Plaintiffs claim that Judge Maloney and other judges of this district are partnered with the MDOC and biased against them, and they allege that Defendant Perttu claims to personally know every judge of the district. (ECF No. 25.) Plaintiffs also filed a motion requesting judicial disqualification and seeking a change of venue in Case 2. (Case 2, ECF No. 16.) As before, if that motion is compared, side-by-side, with the motion pending in this case (ECF No. 25), one can see that the motion in this case is simply a copy of the other motion. Again, the only differences are hand-written notations.

---

[4] According to June 2019 United States Census estimate, the State of Michigan has about 10 million residents. United States Census, *Quick Facts: Michigan*, https://www.census.gov/quickfacts/MI (last visited July 22, 2021).

13

In Case 2, U.S. District Judge Maloney denied Plaintiffs' motion for disqualification and change of venue. Judge Maloney reasoned as follows:

> Under 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The provision requires a judge to *sua sponte* recuse himself if he knows of facts that would undermine the appearance of impartiality. *Youn v. Track, Inc.*, 324 F.3d 409, 422–23 (6th Cir. 2003); *Liteky v. United States*, 510 U.S. 540, 547–48, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). In addition, 28 U.S.C. § 144 requires that "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding." *Id.* An affidavit filed under § 144 must "allege[ ] facts which a reasonable person would believe would indicate a judge has a personal bias against the moving party." *Gen. Aviation, Inc. v. Cessna Aircraft, Co.*, 915 F.2d 1038, 1043 (6th Cir. 1990). The alleged bias must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). Extrajudicial conduct encompasses only "personal bias as distinguished from a judicial one, arising out of the judge's background and association and not from the judge's view of the law." *Youn*, 324 F.3d at 423 (internal quotation marks omitted). "Personal" bias is prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases. *Id.* (citing *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251–52 (6th Cir. 1989)); *Demjanjuk v. Petrovsky*, 776 F.2d 571, 577 (6th Cir. 1985)).
>
> Plaintiff complains that the judges of this court have ruled against him and are partnered with the MDOC to rule against all prisoners. To the extent that Plaintiff argues that the undersigned and Magistrate Judge Vermaat have previously ruled against him, Plaintiff Richards alleges bias that arises strictly from a judicial source, which is not a basis for disqualification. *Youn*, 324 F.3d at 423. To the extent that Plaintiff alleges that the Court has partnered with the MDOC to rule against prisoners or that the undersigned has a personal relationship with any Defendant, his allegations are both untrue and wholly conclusory. The undersigned has no personal relationship with any Defendant. The mere fact that Defendant Perttu or any other Defendant claimed to know the undersigned is not evidence of such a relationship.

14

> With respect to Plaintiff Richards' request to transfer venue to the Eastern District of Michigan, the request will be denied. The action was transferred from the Eastern District to this Court on September 30, 2020 (ECF No. 7), because venue was proper only in this district. *See* 28 U.S.C. § 1406(a). All Defendants reside in this district and the facts underlying the complaint occurred in this district. As a consequence, venue properly lies in this and no other district.
> Plaintiff Richards' motion (ECF No. 16) therefore will be denied.

On September 28, 2020, this case was reassigned to the U.S. District Judge Hala Y. Jarbou. (ECF No. 37.) Plaintiffs have made no claims with respect to Judge Jarbou's involvement in this case. Nevertheless, the reasoning that Judge Maloney applied in addressing Plaintiffs' motion in *Richards, et al. v. Washington, et al.*, applies in this case. Accordingly, the undersigned respectfully recommends that the Court deny Plaintiffs' motion (ECF No. 25).

## VI. Plaintiffs' Motions for Protective Orders and Requests for Federal Investigation and Monitory (ECF Nos. 38, 47)

In both of Plaintiffs' motions, they assert that RUM Perttu and others at AMF are interfering with their mail. They request that the Court direct various federal law enforcement agencies to conduct investigations to ensure that Plaintiffs receive their legal mail. (ECF No. 38, PageID.171-172; ECF No. 47, PageID.202.)

Plaintiffs made the same allegations in Case 2. (Case 2, ECF No. 17.) In Case 2, Judge Maloney found that "Plaintiff's allegations of interference with his mail are wholly conclusory" and that his motion was "wholly unsupported and without merit." (Case 2, ECF No. 27, PageID.185.) In addition, Judge Maloney noted that "Plaintiff has no right to demand a criminal investigation of any claim." (*Id.*) The undersigned concludes that the same reasoning and same conclusion apply here.

15

In addition, Rule 26 of the Federal Rules of Civil Procedure affords the Court broad discretion to grant or deny protective orders. *Procter & Gamble Co. v. Banker's Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996). The orders are designed to resolve issues involving discovery. Fed. R. Civ. P. 26. Plaintiffs' request is wholly unrelated to the discovery process.

As a result, the undersigned respectfully recommends that the Court deny Plaintiffs' motions for protective orders and federal investigations. Plaintiffs may, of course, communicate with the FBI and request an investigation.

**VII.  Recommendation**

Accordingly, the undersigned respectfully recommends that the Court deny RUM Perttu's motion for summary judgment (ECF No. 34). The undersigned also respectfully recommends that the Court deny all of Plaintiffs' motions (ECF Nos. 24, 25, 38 and 47.)    If this recommendation is accepted, all of Plaintiffs' claims will remain.

Dated:   July 29, 2021                                          /s/ *Maarten Vermaat*
                                                                               MAARTEN VERMAAT
                                                                               U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).